Entered on Docket
February 27, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed February 27, 2006

_____
Marilyn Morgan
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONICBLUE INCORPORATED, | Case No.-03-51775-MM |
| Debtor. | Chapter 11 |
| SONICBLUE INCORPORATED, et al., | Adversary No. 05-5106 |
| Plaintiffs, | |
| vs. | |
| VIRTUAL TRANSPORTATION MANAGEMENT, INC, | **MEMORANDUM DECISION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

## INTRODUCTION

In this adversary proceeding, the debtors seek to avoid and recover $578,020.31 that one of the debtors, Diamond Multimedia Systems, Inc., transferred to defendant Virtual Transportation Management, Inc. during the ninety day period preceding the petition date. The debtors have moved for partial summary judgment seeking a determination that VTM is an "initial transferee" under § 550 of the Bankruptcy Code from whom debtors may recover any avoided transfers. In response, VTM has

1

**MEMORANDUM DECISION AND ORDER**

filed a cross-motion for summary judgment asserting that it received the funds as Diamond's agent and did not have sufficient dominion or control over the funds to be considered a transferee. Alternatively, VTM contends that if it is a transferee, it received the funds in the ordinary course of business.

## BACKGROUND

Prior to bankruptcy, Diamond sold and distributed consumer electronics that were manufactured by third parties. As part of this business, Diamond engaged various freight carriers to ship the products to Diamond and from Diamond to assorted retailers throughout the country.

VTM is a company that provides freight-bill audit, payment and reporting services to customers like Diamond. VTM's customers directly hire freight carriers to ship goods, but after the goods are shipped, the freight carriers send their invoices to VTM, who processes the invoices and verifies that payment is appropriate. VTM compiles and forwards periodic reports to its customers to inform the customer about invoices that are ready for payment. The customer then provides the necessary funding and VTM pays the freight carriers.

This is exactly the type of arrangement that Diamond had with VTM. In June 1999, Diamond contracted with VTM for assistance with the processing and payment of Diamond's freight charges. Under the written contract, VTM received, audited and validated transportation invoices on Diamond's behalf. The contract required VTM to submit weekly reports, called funding requests, to Diamond. The reports listed all invoices that were ready for payment. After reviewing the report, Diamond either approved or disapproved payment of the compiled invoices. According to Schedule A of the contract, VTM was then to effect "payment of Customer transportation billings presented by carriers and approved by [Diamond] and VTM, utilizing funds provided by [Diamond]." Diamond provided the necessary funds by transferring money into a segregated bank account in VTM's name. The contract provided that VTM "will issue payments to carriers upon deposit confirmation notice" from the bank where VTM maintained the segregated account. The parties expressly agreed that VTM would not advance its own funds to pay Diamond's carriers.

VTM charged a percentage fee for its service. It included its fee as part of the weekly funding requests and retained the portion of the funded amount that was attributable to its fee.

2

**MEMORANDUM DECISION AND ORDER**

<mark style="writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
For The Northern District Of California</mark>

During the ninety day period preceding the filing of this bankruptcy case, VTM submitted twelve funding requests to Diamond, requesting the transfer of $579,689.38 to the segregated bank account. Diamond funded $578,020.31 of the requests, declining, on two occasions, to fund a total of $1,669.07 owed to FedEx. Of the amount funded, $576,820.31 was paid out to Diamond's freight carriers and VTM retained $1,200.00 as its service fee. During the preference period, VTM generally paid the freight carriers' invoices within two to three days of receiving funds from Diamond. On one occasion there was one week gap between VTM's receipt of funds and its subsequent disbursement to Diamond's freight carriers. A ten day gap occurred on one other occasion.

## **LEGAL DISCUSSION**

Summary judgment obviates the need for trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Here, the terms of the contract between Diamond and VTM are undisputed. The parties also do not dispute that VTM handled Diamond's freight bills as described above. The parties disagree, however, as to whether the resulting contractual relationship, as a matter of law, makes VTM an "initial transferee" of the funds it received from Diamond.

Under § 550(a)(1) of the Bankruptcy Code, a trustee or debtor-in-possession may recover avoided transfers from an "initial transferee" of the transfer. 11 U.S.C. § 550(a)(1). Neither the Bankruptcy Code nor its legislative history defines the term "transferee." In many situations, the initial transferee will be the first entity to whom the debtor transmits money or other assets. However, where a two step transaction is present in which the initial recipient is an intermediary between the debtor and the intended transferee of the asset, the ninth circuit has adopted the view that a mere recipient or conduit that does not have dominion over money or other asset is not a "transferee" within the meaning of § 550(a). *In re Cohen,* 300 F.3d 1097, 1102 (9th Cir. 2002); *In re Bullion Reserve of North America*, 922 F.2d 544, 548-49 (9th Cir. 1991). This so-called "dominion test" was first enunciated in *In re Bonded Financial Services, Inc.*, 838 F.2d 890, 893 (7th Cir. 1988), where Judge Easterbrook reasoned that as a matter of definition, a "transferee" within the meaning of § 550 must be something more than a mere recipient of transferred funds. Instead, the seventh circuit held, "the minimum requirement of

3

<mark>**MEMORANDUM DECISION AND ORDER**</mark>

<mark>Case: 05-05106    Doc# 27    Filed: 02/27/06    Entered: 02/27/06 17:00:28    Page 3 of 8</mark>

status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* Since *Bonded*, the distinction between a mere recipient or conduit and a transferee within the meaning of § 550 has become the generally accepted view of the circuit courts. Dominion or control over an asset has been consistently required before a recipient constitutes an initial transferee. *See e.g., In re Hurtado*, 342 F.3d 528, 533 (6th Cir. 2003); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56-57 (2nd Cir. 1997); *Rupp v. Markgraf*, 95 F.3d 936, 942 (10th Cir. 1996); *In re Reeves*, 65 F.3d 670, 676 (8th Cir. 1995); *In re Coutee*, 984 F.2d 138, 140-41 (5th Cir. 1993); *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1199 (11th Cir. 1988).

Under the dominion test, the determinative factor is whether the entity that receives an asset has the right to put the asset to its own use. Dominion requires legal control over, not just mere possession of, the asset. *Cohen*, 300 F.3d at 1102. To be a transferee under § 550, a recipient must have the ability to use funds or other assets freely. *Id.* Thus, in *Bullion*, the ninth circuit found that a defendant's contractual obligation to use the money it received to purchase stock and pledge the stock in favor of another prevented the defendant from having dominion or control of the money. *Bullion*, 922 F.2d at 549. In *Cohen*, a debtor purchased a cashier's check payable to one of her husband's creditors and gave the check to her husband. The court determined that the husband's limited right to retain, destroy or deliver the check to his creditor, the payee of the check, was not sufficient to satisfy the dominion test. 300 F.3d at 1107.

In light of the ninth circuit's approval of the dominion test, I am not persuaded by the debtors' assertion that, under *Bullion*'s formulation of the test, a recipient of funds only avoids being a transferee if the recipient demonstrates that it was an agent of the creditor that ultimately receives the funds. In other words, debtors assert as a matter of law that VTM is an initial transferee because there is no evidence that VTM was an agent of the various freight carriers that VTM ultimately paid. While the dominion test is used to distinguish between mere conduits and true transferees, nothing in the test requires a recipient to be the agent of anyone, much less of a transferee, before the recipient can avoid liability under § 550. Although the *Bullion* court restated a hypothetical example from *Bonded* "if A gives a check to B as agent for C, then B is not a transferee," the court did not hold, or even suggest, that this hypothetical represents the only set of facts that would prevent transferee liability under § 550.

Significantly, the ninth circuit never determined whether the defendant in *Bullion* was anyone's agent. The court's analysis was limited to whether the defendant had the ability to use the funds freely. Because the defendant therein was contractually obligated to use the money in a particular way, it did not have dominion and was not a transferee of the funds.

Debtors' reliance on *In re Incomnet, Inc.*, 299 B.R. 574 (B.A.P. 9th Cir. 2003) to inject an agency requirement into the dominion test is similarly unconvincing. In that case, the Universal Service Administrative Company administered a federally regulated program under which telecommunication providers had to contribute a percentage of their revenues to USAC for the purpose of developing a universal telecommunication system. USAC argued that it was not a transferee of money it collected because Federal Communications Commission regulations restricted the USAC's use of the collected funds. In deciding that USAC was a transferee, the appellate panel reiterated the hypothetical example originally described in *Bonded*, but the court did not base its decision on the absence of an agency relationship. The crucial fact for the appellate panel was that *Incomnet* involved a one step transaction rather than a two step transaction where payment is made first to an intermediary followed by a second payment to the ultimate transferee. Because the USAC was not a conduit to any other entity, the court believed that the dominion test was inappropriate. Here, there is no question that a two step transaction is involved. The undisputed evidence establishes that Diamond transmitted funds to VTM with the expectation that VTM would then channel the money through to pay Diamond's freight carriers.

Other cases confirm that liability under § 550 can be avoided regardless of whether VTM was an agent of the freight carriers. In *Finley, Kumble,* an insurance broker acted on behalf of the *debtor* when it received debtor's funds and used them to purchase insurance for the debtor. The broker was not an initial transferee because the broker had no discretion to do anything other than transmit the money to the insurance provider. *Finley, Kumble*, 130 F.3d at 56-57. Similarly, a check courier hired by a debtor was not an initial transferee because it was contractually bound to deliver the check to the debtor's creditor. *Rupp v. Markgraf*, 95 F.3d at 940. Likewise, a port agent was not an initial transferee where it acted as a "disbursing agent" for the debtor shipping company by paying third party vendors with debtor's funds. *In re Timber Line, Inc.*, 59 B.R. 728 (Bankr. S.D.N.Y. 1986). From these examples, it is apparent that in a two step transaction, the tag assigned to the relationship between the

intermediary and the debtor or creditor is unimportant. The conduit may be an agent, a trustee, a courier or simply a party bound by the terms of a contract. It is the freedom or lack of freedom to control the funds that is determinative of an intermediary's status as a transferee.

Based on the authorities discussed above, I conclude that VTM is not an initial transferee of the funds that were ultimately paid to Diamond's freight carriers. Although debtors claim that there is nothing in the contract to require VTM to pay the freight carrier invoices, they are incorrect. A careful reading of the contract reveals that VTM was to effect payment of all invoices approved by Diamond. Further, payment was to issue "upon receipt of deposit confirmation" verifying that Diamond had transferred the funds needed to pay the invoices. This contractual obligation distinguishes this case from *Hurtado* on which the debtors heavily rely. In *Hurtado*, the debtors, a married couple, transferred legal title to their money to the husband's mother who maintained a separate bank account for the funds and used the funds at the debtors' direction. In finding the mother to be an initial transferee, the court specifically noted that there was no evidence of any formal contractual arrangement that required the mother to obey the debtors' commands or that provided recourse to the debtors if the mother chose not to follow their instructions. *Hurtado*, 342 F.3d at 535. Here, by contrast, there is a specific contractual provision that required VTM to pay Diamond's freight carriers. The debtors would have had recourse under the contract if VTM had failed to make the payments. VTM's legal obligation to disburse funds as set forth in the contract, blocked any dominion it might otherwise have had over the funds. Consistent with its legal obligations, VTM paid the carriers within a several days of receiving funds from Diamond. The undisputed facts establish that VTM was nothing more than a station stop along the route to the money's ultimate destination. Because VTM did not have the necessary dominion to be an initial transferee under § 550 of the Bankruptcy Code, VTM is entitled to summary judgment in its favor with respect to the funds ultimately paid to the freight carriers.

In light of the conclusion that VTM was not an initial transferee, it is unnecessary to address VTM's ordinary course of business defense with respect to the funds that went to the freight carriers. However, VTM did receive $1,200 from Diamond as a fee for its freight auditing services. Based on the record before me, it is apparent that VTM had dominion over the funds attributable to its fee. It retained those funds and was able to use them without restriction. VTM asserts that it is entitled to

6

**MEMORANDUM DECISION AND ORDER**

summary judgment even with respect to its fee because the fee was paid in accordance with the business terms and practices that the parties had followed for four years prior to the bankruptcy filing. Debtors reply that it has not had the opportunity to properly investigate the facts surrounding the ordinary course of business defense. Debtors' counsel has provided a declaration indicating that he believed the only issue to be addressed in the motions for summary judgment would be the dispute over VTM's status as an initial transferee. As a result, counsel states, he deferred discovery related to the ordinary course of business defense until after the court ruled on the motions for summary judgment. Pursuant to Fed. R. Civ. P. 56(f), the debtors request that any counter motion based on the ordinary course of business defense be denied pending further discovery on that issue. In light of the debtors' Rule 56(f) request, it is appropriate to deny VTM's counter motion for summary judgment, without prejudice, as to the fees it received from debtors during the ninety day period preceding this bankruptcy case.

For the reasons explained, plaintiffs' motion for partial summary judgment is denied. The defendant's cross-motion for summary judgment is granted with respect to the $576,820.31 that VTM ultimately paid out to the debtors' freight carriers and is denied, without prejudice, as to the $1,200.00 that VTM received as a fee for its services.

Good cause appearing, IT IS SO ORDERED.

**** END OF ORDER ****

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SERVICE LIST**

| | |
|---|---|
| Matthew S. Walker | Linda M. Gonsalves |
| William B. Freeman | Stephen F. Heller |
| Pillsbury Winthrop Shaw Pittman, LLP | Gonsalves & Kozachenko |
| 101 West Broadway, Suite 1800 | 1133 Auburn Street |
| San Diego, CA 92101-8219 | Fremont, CA 94538 |